## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Mar 20 2015, 10:17 am

CLERK
of the supreme court,
court of appeals and
tax court

| ATTORNEY FOR APPELLANT | ATTORNEYS FOR APPELLEE |
|---|---|
| Leanna Weissmann<br>Lawrenceburg, Indiana | Gregory F. Zoeller<br>Attorney General of Indiana<br><br>Angela N. Sanchez<br>Deputy Attorney General<br>Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Billy G. Luke,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | March 20, 2015<br><br>Court of Appeals Case No.<br>15A01-1409-CR-418<br><br>Appeal from the Dearborn Superior Court<br>The Honorable Jonathan N. Cleary, Judge<br>Cause No. 15D01-1202-CM-111 |

**Bradford, Judge.**

# Case Summary

[1]     Appellant-Defendant Billy Gene Luke was convicted of four counts of public indecency after exposing his genitals on several occasions to four female

pharmacy employees. Luke was sentenced to an aggregate term of 1095 days with 725 days suspended to probation. During Luke's probationary period, he was convicted of several additional misdemeanor and criminal offenses and, while incarcerated, Luke attempted to solicit another individual to intimidate the four female victims. Ultimately, the trial court revoked Luke's home detention as a result of his subsequent convictions. Luke argues that his probationary period did not begin until he was actually released on probation and that criminal offenses committed after sentencing but prior to release on probation are not sufficient to support probation or home detention revocation. We disagree with Luke and affirm the trial court's revocation of his home detention.

## Facts and Procedural History

[2] On July 25, 2012, Luke was convicted of four counts of public indecency, a Class A misdemeanor, after it was found that he had exposed his genitals on multiple occasions to four women who worked at the pharmacy across the street from his residence in Dillsborough. On August 3, 2012, the trial court sentenced Luke to an aggregate term of 1095 days with 725 days suspended to probation. On May 23, 2013, Luke was released on probation. Between June and August of 2013, while on probation, Luke broke multiple windows at the pharmacy, the local police station, and other stores in the area. On July 9, 2013, Appellee-Plaintiff the State of Indiana ("the State") requested a probation revocation hearing and amended the request on August 23, 2013, after Luke

was charged with invasion of privacy, criminal trespass, and voyeurism (these charges were unrelated to Luke's breaking the windows). On December 23, 2013, the court revoked 730 days of the suspended sentence and ordered Luke serve the remainder of his sentence on home detention. Luke was released on home detention on January 2, 2014 but was arrested on January 10, 2014 for Class D felony invasion of privacy, for which he was convicted in July of 2014.

[3] While incarcerated, Luke made multiple phone calls to his former cellmate, Chase Merkel. (State's Ex. 3-5) During these calls, Luke asked Merkel to break windows at the pharmacy where the four victims worked, intimidate the victims by throwing a "toy" (believed to be a dildo) inside the pharmacy, slash one of the victim's tires, and leave a condom full of bullets with a note reading "last warning" at one of the victim's residences. State's Ex. 4. Also while incarcerated, Luke wrote letters to the trial court and prosecutor. In his letter to the prosecutor, Luke threatened to kill a Dillsboro police officer and threatened the four pharmacy employee-victims.

[4] On August 21, 2014, Luke was convicted of seven counts of Class A misdemeanor criminal mischief, relating to the broken windows, as well as one count of Class C felony stalking for violating a no-contact order and stalking the same four pharmacy employees. The acts supporting the stalking charge were committed at various times between January 24, 2012 and February 19, 2014. On August 28, 2014, the trial court revoked Luke's home detention based on his subsequent criminal convictions.

# Discussion and Decision

Luke argues that the State provided insufficient evidence that he violated the terms of his home detention.

## I. Standard of Review

[5]     The State must prove a probation violation by a preponderance of the evidence. *Braxton v. State*, 651 N.E.2d 268, 270 (Ind. 1995), *reh. denied*. On review, we neither weigh the evidence nor judge the credibility of witnesses. *Id*. We look only to the evidence most favorable to the State. *Id*. So long as substantial evidence of probative value exists to support the trial court's finding that a violation occurred, we will affirm the judgment. *Id*.

[6]     *Parker v. State*, 676 N.E.2d 1083, 1086 (Ind. Ct. App. 1997). The violation of a single condition of probation is sufficient to revoke probation. *Wilson v. State*, 708 N.E.2d 32, 34 (Ind. Ct. App. 1999). "[T]he standard of review for a petition for termination of in-home detention privileges is analogous to that of a probation revocation hearing." *Brooks v. State*, 692 N.E.2d 951, 953 (Ind. Ct. App. 1998).

## II. Sufficiency of Evidence

[7]     Luke does not argue that there was insufficient evidence that he engaged in conduct that would violate the rules of his home detention. Rather, Luke argues that he did not engage in such conduct during his "probationary period" for the purposes of Indiana Code section 35-38-2-3. Luke argues that Section 35-38-2-3 requires that, to revoke a person's probation, the trial court must find that a violation occurred specifically during the period in which the person was

released on probation. Such an interpretation would mean that violations during any period of time after sentencing, but prior to being released on probation, would not be sufficient to justify revocation of probation. However, we have previously interpreted Section 35-38-2-3 and reached a different conclusion.

> In *Ashley v. State*, 717 N.E.2d 927, 928 (Ind. Ct. App. 1999), *reh'g denied*, this court held that the probationary period begins immediately after sentencing and ends at the conclusion of the probationary phases of the defendant's sentence. Furthermore, in *Gardner v. State*, 678 N.E.2d 398, 400-401 (Ind. Ct. App. 1997), this court held that:
>
>> In *Ashba v. State* [(1991) Ind. App., 570 N.E.2d 937] …, we held that a defendant who was on parole from the Indiana Department of Correction, but not yet on probation, *can violate his probation prospectively*. The court noted that [Indiana Code section 35-38-2-3(h)] allows the court to revoke probation if it finds that the defendant violated "a condition at any time before termination of the [probationary] period."

*Crump v. State*, 740 N.E.2d 564, 568 (Ind. Ct. App. 2000) (emphasis added). We have applied these same probation revocation standards to placements in Community Corrections, such as home detention. *Million v. State*, 646 N.E.2d 998, 1002 (Ind. Ct. App. 1995).

[8] Luke was sentenced on August 3, 2012, and his probation, had it been successfully completed, would have terminated on August 3, 2015. (App. 153-56, 158) Pursuant to *Ashley*, this entire three-year period represents Luke's "probationary period," during which Luke committed and was convicted of a host of new offenses. On August 22, 2013, Luke was charged with invasion of privacy, criminal trespass, and voyeurism. Luke admitted to those charges

following the State's August 23, 2013 probation revocation petition and, based thereon, the trial court revoked Luke's probation and ordered him to serve the remainder of his sentence on home detention. On August 21, 2014, Luke was convicted of eight counts of criminal mischief as a result of offenses which were committed between June and August of 2013. These offenses were undoubtedly committed during Luke's probationary period. It is irrelevant that they were committed prior to when Luke began his home detention. As such, the court had sufficient evidence that Luke violated the terms of his home detention.

[9] The judgment of the trial court is affirmed.

[10] Vaidik, C.J., and Kirsch, J., concur.